**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Joseph Mathias G., | Case No. 18-cv-3283 (ECT/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew Saul, Commissioner of Social Security, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joseph G. seeks judicial review of a final

decision by the Commissioner of Social Security denying his application for disability

insurance benefits ("DIB"). The matter is before the Court on the parties' cross-motions

for summary judgment [Doc. Nos. 13, 15], which were referred to the undersigned for the

issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court

recommends that Plaintiff's motion be denied and the Commissioner's motion be

granted.

## I.    Procedural Background

### A.    Administrative Proceedings

Plaintiff filed an application for DIB on February 9, 2016, alleging an onset of

disability date of August 25, 2015, due to rheumatoid arthritis and resultant joint pain;

mild coronary artery disease; a myocardial infarction on September 26, 2017, which

required stenting; chronic liver disease and hepatitis C, in remission; depression, in

remission; hypertension; and vasculitis.  (R. 11, 36–37.)[1]  Plaintiff's DIB application was

denied on initial review and reconsideration.  (*Id.* at 11)  He then requested a hearing

before an administrative law judge ("ALJ").  (*Id.*)

At the hearing on April 18, 2018, the ALJ first elicited testimony from Plaintiff

about his impairments, symptoms, and past work.  (R. 35–61).  The ALJ then questioned

vocational expert Wayne Onken.  Mr. Onken testified that Plaintiff's past work could be

categorized as "machinist," under Dictionary of Occupational Titles ("DOT") 600.280-

022.  (R. 63.)  The job "machinist" is classified as "medium work."[2]  (R. 63.)

The ALJ propounded several hypothetical questions to Mr. Onken.  He first asked

Mr. Onken to consider an individual the same age, education, and work experience as

Plaintiff who could perform medium work, with the following additional limitations:

"frequently climb ramps and stairs.  Never climb ladders, ropes, scaffolds; frequently

---

[1]  The Social Security Administrative Record ("R.") is available at ECF No. 11.

[2]  DOT 600.280-022 describes "medium work" as

> Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or
> condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force
> frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the
> time) and/or greater than negligible up to 10 pounds of force constantly
> (Constantly: activity or condition exists 2/3 or more of the time) to move
> objects. Physical demand requirements are in excess of those for Light
> Work.

DOT 600.280-022, U.S. Dep't of Labor (4th ed. rev. 1991), 1991 WL 684669.

balance, stoop, kneel, crouch, crawl; frequently reach, handle[,] and finger bilaterally. No concentrated exposure to fumes, odors, dusts, gases, or poor ventilation; no exposure to workplace hazards; no exposure to extreme cold, heat[,] or humidity." (R. 63) (hereinafter "Hypothetical 1"). Mr. Onken testified in response to Hypothetical 1 that such an individual could perform Plaintiff's past work as a machinist. (R. 63.) He confirmed that the position would not require constant reaching, handling, or fingering, and that his testimony was consistent with the DOT. (R. 63.)

The ALJ next asked Mr. Onken to consider an individual the same age, education, and work experience as Plaintiff who could perform light work with the following additional limitations:

> Occasionally climb ramps and stairs; never climb ladders, ropes, scaffolds; frequently balance, stoop, kneel, crouch, crawl; frequently reach, handle, and finger bilaterally; frequently operate foot controls. No concentrated exposure to fumes, odors, dusts, gases[,] or poor ventilation; no exposure to workplace hazards; no exposure to extreme cold, heat[,] or humidity.

(R. 64) (hereinafter "Hypothetical 2"). Mr. Onken testified that such an individual could not perform Plaintiff's past work, because of the light work limitation. (R. 64.) However, some unskilled labor jobs would qualify under Hypothetical 2: specifically, cashier, routing clerk, and counter clerk. (R. 64–65.) Mr. Onken stated his testimony was consistent with the DOT. (R. 65.)

In the ALJ's third hypothetical question to Mr. Onken, the ALJ added the following restriction to Hypothetical 2: no more than 2 hours of standing or walking in an 8-hour day, and no more than 6 hours of sitting in an 8-hour day. (R. 65) (hereinafter "Hypothetical 3"). Mr. Onken testified the additional restriction would place the work at

the sedentary level, thus precluding work as a cashier, routing clerk, or counter clerk. (R. 65.)  Mr. Onken testified that his testimony in response to Hypothetical 3 was consistent with the DOT.  (R. 65.)

Plaintiff's counsel then questioned Mr. Onken.  He asked if a hypothetical individual who could lift 50 pounds occasionally, lift 20 pounds frequently, stand or walk 6 hours in an 8-hour day, and sit 6 hours in an 8-hour day could work as a machinist. (R. 66) (hereinafter "Hypothetical 4").  Mr. Onken answered no, because in his experience machinists typically stand more than 6 hours in an 8-hour workday.  (R. 66.)

Plaintiff's counsel then added a restriction to light work.  (R. 66) (hereinafter "Hypothetical 5").  Mr. Onken replied that the hypothetical individual could not perform Plaintiff's past work with that limitation.  (R. 66.)  Plaintiff's counsel pointed out to the ALJ that the state agency consulting physicians who reviewed Plaintiffs' DIB application had limited Plaintiff to about 6 hours standing.  (R. 66.)  Thus, he argued, past work under Hypotheticals 4 and 5 would be foreclosed.  (R. 66.)

The ALJ asked Mr. Onken whether a standing requirement of 8 hours in an 8-hour workday would preclude the hypothetical individual from doing any medium work, and Mr. Onken said it would.  (R. 67.)  Mr. Onken testified that most workers with jobs at the medium exertional level are expected to stand for 8 hours and that an individual who could not stand for 8 hours would be precluded from doing medium work.  (R. 67.)  The ALJ then asked Mr. Onken to consider an individual the same age, education, and work experience as Plaintiff

4

who can occasionally lift up to 50 pounds; frequently lift up to 25 pounds; can sit or stand for six of eight hours[;] can walk or stand for six of eight hours; can sit for six of eight hours.  The individual can frequently climb ramps and stairs; never climb ladders, ropes, scaffolds.  The individual can frequently balance, stoop, kneel, crouch, and crawl.  The individual can frequently reach, handle[,] and finger bilaterally.  The individual can have no concentrated exposure to fumes, odors, dusts, gases[,] and poor ventilation; no exposure to workplace hazards; no exposure to extreme cold, heat[,] or humidity.

(R. 67–68) (hereinafter "Hypothetical 6").  Mr. Onken testified that such an individual could not perform Plaintiff's past work as a machinist, based on the standing and walking requirements.  (R. 68.)  Mr. Onken said his testimony was consistent with the DOT. (R. 68.)  The hearing testimony concluded at that point.

On July 2, 2018, the ALJ issued a "partially favorable" decision, finding that Plaintiff was disabled as of September 26, 2017, but not before.  (R. 8, 12.)  Following the five-step sequential evaluation procedure described in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 25, 2015.  (R. 14.)  At step two of the sequential evaluation, the ALJ found that Plaintiff had severe impairments of alcohol abuse, alcoholic cirrhosis of the liver, chronic pain syndrome, coronary artery disease, and rheumatoid arthritis.  (R. 14.)  At the third step, the ALJ concluded that no impairment or combination of impairments met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 16.)

Proceeding to step four, the ALJ found that before September 26, 2017, Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following additional limitations: "frequently climb

5

ramps and stairs.  Never climb ladders, ropes, scaffolds.  Frequently balance, stoop,

kneel, crouch, crawl.  Frequently reach, handle, and finger bilaterally.  No concentrated

exposure to fumes, odors, dusts, gases, or poor ventilation.  No exposure to work place

hazards.  No exposure to extreme cold, heat, or humidity." (R. 16.)  This RFC

corresponded to the limitations set forth in Hypothetical 1.

The ALJ also found that, beginning on September 26, 2017, Plaintiff had the RFC

"to perform light work as defined in 20 [C.F.R. § 404.1567(b)] except frequently climb

ramps and stairs.  Never climb ladders, ropes, scaffolds.  Frequently balance, stoop,

kneel, crouch, crawl.  Frequently reach, handle, and finger bilaterally.  No concentrated

exposure to fumes, odors, dusts, gases, or poor ventilation.  No exposure to work place

hazards.  No exposure to extreme cold, heat, or humidity." (R. 20.)

In explaining the difference between Plaintiff's RFC before and after September

26, 2017, the ALJ observed that Plaintiff had sought treatment for intermittent substernal

chest burning on September 26, 2017.  (R. 20.)  Plaintiff underwent an angioplasty and

stenting on that date.  (R. 20.)  He was discharged on September 28, 2017, but sought

treatment for chest pain in November 2017.  (R. 21.)  Plaintiff also attended 22 cardiac

rehabilitation therapy sessions between December 2017 and mid-March 2018.  (R. 21.)

The ALJ determined that Plaintiff's worsening cardiac impairment, considered in

combination with his preexisting rheumatoid arthritis and right peroneal nerve

disfunction, reduced his RFC from medium exertional work to light exertional work as of

September 26, 2017.  (R. 21.)

Based on Plaintiff's RFC before September 26, 2017, the ALJ found that Plaintiff could have performed his past work as a machine operator prior to that date.  (R. 22.) The ALJ noted that this finding was consistent with Mr. Onken's testimony in response to Hypothetical 1.  (R. 23, 24.)  The ALJ confirmed that Plaintiff's past work as a machine operator met DOT 600.280-022.  (R. 23.)

The ALJ specifically rejected Mr. Onken's testimony in response to Hypotheticals 2, 3, 4, 5, and 6, either because the questions presumed an individual who was limited to light work, which was not warranted by the medical evidence before September 26, 2017; or because Mr. Onken's responses were premised on his testimony that medium work required more than 6 hours, and as much as 8 hours, of standing in an 8-hour workday. (R. 23.)  The ALJ also rejected Mr. Onken's testimony that a machinist typically stood more than 6 hours in an 8-hour workday and that most individuals who worked at medium jobs stood on their feet for most of the workday.  (R. 23.)  The ALJ discredited this testimony as inconsistent with the Program Operations Manual System ("POMS") DI 25001.001(A)(46), which defines medium work as, *inter alia*, "usually" requiring "walking or standing for approximately 6 hours of the day."  (R. 23.)  The ALJ explicitly found that the objective evidence of record did not support imposing a greater standing/walking limitation than 6 hours in an 8-hour day.  (R. 18, 24.)  Thus, the ALJ concluded, Plaintiff was capable of performing his past relevant work as a machine operator between August 25, 2015, and September 26, 2017.  (R. 24.)  Consequently, he was not disabled before September 26, 2017.  (R. 24.)

7

On the other hand, the ALJ found, Plaintiff was not capable of doing his past work after September 26, 2017, due to the change in Plaintiff's physical exertional level from medium work to light work.  (R. 24.) Nor were there other jobs existing in significant numbers that he could perform.  (R. 24.)  Thus, he was disabled as of September 26, 2017.  (R. 24.)

Plaintiff sought review of the unfavorable aspect of the ALJ's decision by the Appeals Council, which denied the request.  The ALJ's decision then became the final decision of the Commissioner.

## B.    Judicial Proceedings

Plaintiff commenced this action for judicial review on November 30, 2018. Consistent with District of Minnesota Local Rule 7.2, he filed a motion for summary judgment on April 22, 2019.  Plaintiff describes the issue for review as "very narrow." (Pl.'s Mem. Supp. Mot. Summ. J. at 10 [Doc. No. 14].)  He argues the ALJ improperly disregarded Mr. Onken's testimony that Plaintiff could not perform his past work as a machinist.  (*Id.* at 10–11.)  Plaintiff concedes it is within the ALJ's province to determine whether a vocational expert's testimony is consistent with the DOT and, if it is not, to resolve the conflict.  (*Id.* at 11.)  He suggests the ALJ erred, however, by relying on a POMS guideline to discredit Mr. Onken's testimony.  (*Id.* at 11–14.)  Plaintiff submits that POMS DI 25001.001(A)(46) is inconsistent with DOT 600.280-022 and 20 C.F.R. §§ 404.1566 and 404.1567.  (Pl.'s Mem. Supp. at 15.)  Finally, Plaintiff argues the ALJ erred by not providing a more specific definition of medium work in his hypothetical questions.  (*Id.* at 12–13.)

The Commissioner responds in his cross-motion for summary judgment that the ALJ properly chose to rely on Mr. Onken's response to Hypothetical 1 rather than his responses to the other hypothetical questions, and that the ALJ appropriately evaluated Mr. Onken's testimony and gave valid reasons for discrediting the testimony he did.

## II.    Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision.  42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  The threshold for substantial evidence "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).  The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently.  *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision.  *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability.  *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).  To meet the definition of disability for DIB purposes, the claimant

9

must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

## III.   Discussion

The question at hand is whether substantial evidence supports the ALJ's finding at step four that prior to September 26, 2017, Plaintiff had the RFC to perform his past work as a machinist.

An ALJ assesses an individual's RFC at the beginning of step four.  An individual's RFC measures the most that person can do, despite his limitations, in a work setting.  20 C.F.R. § 404.1545(a)(1).  The ALJ is responsible for assessing RFC. 20 C.F.R. § 404.1546(c).  The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  But "RFC is not simply a laundry list of impairments and limitations."  *Gann v. Colvin*, 92 F. Supp. 3d 857, 884 (N.D. Iowa 2015).  The ALJ may distill what may be numerous impairments and limitations into a descriptive phrase, as long as it accurately captures a claimant's abilities in a work setting.  *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

An ALJ's evaluation of a claimant's RFC "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual

10

can still do that work." Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *2 (S.S.A. 1982). If a claimant has the RFC to perform a job he had in the past, that is generally a sufficient reason to find him "not disabled." *Id.* at *3.

Although vocational experts are most often used at step five of the sequential analysis, 20 C.F.R. § 404.1566(e) provides that an ALJ may use a vocational expert to determine whether the claimant's "work skills can be used in other work and the specific occupations in which they can be used, or [when] there is a similarly complex issue." 20 C.F.R. § 404.1566(e). However, "[v]ocational expert testimony is not required at step four" because the claimant has the burden to prove he cannot perform his prior work. *Lewis v. Barnhart*, 353 F.3d 642, 648 (8th Cir. 2003). When evidence provided by a vocational expert is inconsistent with the DOT, the ALJ must resolve the conflict. SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). An ALJ may not rely on evidence from a vocational expert that is "inconsistent with our regulatory policies or definitions." *Id.* at *3.

To begin the discussion, the Court observes that Plaintiff has not challenged the ALJ's assessment of his RFC before September 26, 2017, including the limitations imposed and the finding that Plaintiff was able to perform medium work—as that term is defined in the relevant regulations and administrative policies. Plaintiff does not argue that the limitations included in Hypothetical 1, including Plaintiff's ability to stand for up to 6 hours a day, are not supported by the objective medical evidence and other evidence

of record,[3] or that Mr. Onken's testimony in response to Hypothetical 1 was flawed.

Having reviewed the ALJ's decision and the record, the Court finds that substantial

evidence supports the ALJ's assessment of Plaintiff's RFC, the restrictions and

limitations set forth in Hypothetical 1, and the ALJ's reliance on Mr. Onken's testimony

in response to Hypothetical 1.

Plaintiff's challenge to the ALJ's decision essentially boils down to his wish that

the ALJ would have credited Mr. Onken's responses to Hypotheticals 2, 3, 4, 5, or 6.  But

that testimony was elicited from hypothetical questions that either contained an

assumption (light work) that was not supported by the evidence of record or an

assumption (8-hour standing requirement) that was not supported by the DOT or any

other administrative regulation or policy.  For the reasons set forth below, the Court finds

the ALJ did not err in discrediting the disputed testimony.

Plaintiff argues the ALJ erred in finding the disputed testimony inconsistent with

the DOT.  That argument mischaracterizes the ALJ's decision.  The ALJ did not find

Mr. Onken's testimony in response to Hypotheticals 2 through 6 inconsistent with the

DOT.  The only discussion of the correlation between the DOT and Mr. Onken's

testimony occurred when the ALJ described Plaintiff's past work as a machinist, referred

to DOT 600.280-022, and observed that Mr. Onken testified in response to Hypothetical

1 that the hypothetical individual could have performed Plaintiff's past work as a

---

[3]  Briefly stated, the ALJ found that before September 26, 2017, Plaintiff's rheumatoid
arthritis was controlled with medication, when Plaintiff was compliant; that Plaintiff's
coronary artery disease was "very mild" and asymptomatic; and that Plaintiff's liver
function no longer needed monitoring or follow-up.  (R. 17–19.)

machinist.  (R. 23.)  There was no discrepancy to resolve in relying on Mr. Onken's testimony in response to Hypothetical 1.  Notably, DOT 600.280-022 does not contain a standing limitation or requirement.

It was not until the ALJ addressed the hypothetical questions posed by Plaintiff's representative, which added a standing limitation not present in DOT 600.280-022, that the ALJ recognized an inconsistency to resolve.  That inconsistency was not between DOT 600.280-022 and Mr. Onken's testimony—though there is an obvious inconsistency, as DOT 600.280-022 does not contain a standing requirement at all—but between Mr. Onken's testimony about the standing requirement for medium work and an SSA guideline, POMS DI 25001.001(A)(46), that expands on the description of medium work.

Mr. Onken testified that medium work requires standing for 8 hours a day and that an inability to stand for 8 hours would preclude an individual from doing medium work.  The ALJ discredited that testimony as inconsistent with POMS DI 25001.001(A)(46), which states that medium work "usually" requires walking or standing for about 6 hours.[4] "Although POMS guidelines do not have legal force, and do not bind the Commissioner, [the Eighth Circuit] has instructed that an ALJ should consider the POMS guidelines." *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003).  Accordingly, the Court finds

---

[4] The 8-hour standing requirement for medium work proposed by Mr. Onken is not even required for "heavy work," which requires walking or standing for only "a significant part of the day."  POMS DI 25001.001(A)(38).

that the ALJ did not err by considering a POMS guideline to discredit the disputed

testimony from Mr. Onken.

Plaintiff next argues that the ALJ erred by not providing a more specific definition

of medium work to Mr. Onken.  But, as the ALJ stated at the hearing before propounding

the hypothetical questions to Mr. Onken, medium work is well-defined in the relevant

regulations and rulings.  "Medium work involves lifting no more than 50 pounds at a time

with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R.

§ 404.1567(c).  DOT 600.280-022 describes medium work in the context of a machinist

job as:

> Medium Work - Exerting 20 to 50 pounds of force occasionally
> (Occasionally: activity or condition exists up to 1/3 of the time) and/or
> 10 to 25 pounds of force frequently (Frequently: activity or condition exists
> from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds
> of force constantly (Constantly: activity or condition exists 2/3 or more of
> the time) to move objects. Physical demand requirements are in excess of
> those for Light Work.

Moreover, the ALJ did expand on the definition of medium work, as that term applied to

Plaintiff, by including limitations on climbing, balancing, stooping, kneeling, crouching,

and crawling; exposure to fumes, odors, dusts, gases, and poor ventilation; exposure to

workplace hazards; and exposure to extreme temperatures or humidity.  The ALJ's

assessed RFC and resulting hypothetical in Plaintiff's case were a far cry from *Pfitzner v.*

*Apfel*, on which Plaintiff relies, where "the ALJ never specifically articulated Pfitzner's

residual functional capacity" but said only that Pfitzner could do medium work.  169 F.3d

566, 568 (8th Cir. 1999).

14

Finally, Plaintiff argues that the ALJ should not have relied on POMS DI 25001.001(A)(46) because it conflicts with DOT 600.280-022 and 20 C.F.R. §§ 404.1566 and 404.1567 in that the POMS guideline contains a standing restriction whereas the DOT and relevant regulations do not. Were the Court to accept this argument and conclude that DOT 600.280-022 and the relevant regulations must be strictly construed, there would be no standing requirement incorporated in Plaintiff's RFC at all. The Court doubts that is Plaintiff's intent.

"As an interpretation of a regulation promulgated by the Commissioner, the POMS control unless they are inconsistent with the regulation or plainly erroneous." *Rodysill v. Colvin*, 745 F.3d 947, 950 (8th Cir. 2014). The Court finds that the standing component contained in the description of medium work in POMS DI 25001.001(A)(46) is not plainly erroneous or inconsistent with DOT 600.280-022 or 20 C.F.R. § 404.1567. SSR 83-10, which has been in effect for more than thirty years, includes a similar standing requirement for medium work: "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . . ." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983).

**IV.    Recommendation**

The Court concludes that substantial evidence supports the ALJ's finding that before September 26, 2017, Plaintiff had the RFC to perform his past work as a machinist. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment [Doc. No. 13] be **DENIED**;

2. Defendant's Motion for Summary Judgment [Doc. No. 15] be **GRANTED**;

and

3. Judgment be entered accordingly.

Dated: January 28, 2020                    s/ *Hildy Bowbeer*
                                           HILDY BOWBEER
                                           United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).